IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH B. COLE, a minor, by his Parents and Guardians, DAVID N. COLE and FRANCES P. COLE, | ) ) ) ) | Civil Action No. 08-776 |
| Plaintiffs, | ) ) | Magistrate Judge Lenihan |
| v. | ) ) | |
| BIG BEAVER FALLS AREA SCHOOL DISTRICT, | ) ) ) | Re: Doc. No. 6 |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I.     Procedural Background

This civil rights action filed pursuant to 42 U.S.C. § 1983 is brought by David N. Cole, and Frances P. Cole on behalf of their minor son Joseph B. Cole (hereinafter collectively referred to as "Plaintiff.") Plaintiff was injured in shop class at the senior high school of Defendant Big Beaver Falls Area School District (hereinafter "Defendant"). Plaintiff's fingers were severed by a table saw in the Industrial Materials Classroom that was allegedly lacking a guard and used by Plaintiff without adult supervision. Pursuant to 42 U.S.C. § 1983, Plaintiff specifically invokes the "state-created danger" and "special relationship" theories of liability. The case is presently before the Court on Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted

(Doc. No. 6).

II.     Relevant Facts

On March 10, 2006, at approximately 1:30 p.m., Joseph Cole, minor Plaintiff herein, was injured in the Industrial Materials Classroom at the Big Beaver Falls Area Senior High School. (Complaint, Doc. No. 1 at ¶ 4) (hereinafter "Doc. No. 1 at ¶ __). According to the Complaint, Joseph Cole was participating in wood shop class where he was attempting to cut a piece of wood on a table saw. (Doc. No. 1 at ¶ 6.) His left hand came in contact with the blade of the table saw, severing the fingers of his left hand. (Doc. No. 1 at ¶ 6.) This particular table saw, at the time of the accident, "and for a considerable period of time" prior to the accident, was lacking a guard. (Doc. No. 1 at ¶¶ 5, 6.) Plaintiff avers that the minor Plaintiff's injuries were the result of instructing Plaintiff to remove the guard from the saw blade, "failing and neglecting to maintain" the saw in a reasonably safe condition, "[c]arelessly, negligently and recklessly failing to maintain the guard on the saw," permitting Plaintiff and other students to utilize the saw without a blade guard, and that Defendant had notice, actual and /or constructive of the absence of the guard on the saw and the dangerous condition created thereby . . .." (Doc. No. 1 at ¶ 7.) Plaintiff also alleges that Defendant failed to warn of the danger, failed to inspect the table saw, and failed to properly supervise its employees with respect to the care and condition of the saw. (Doc. No. 1 at ¶ 7.) Further, Plaintiff avers that his injuries resulted from "[i]nstructing students to make cuts on the table saw when said saw lacked a blade guard that could be engaged during this particular cut or type of activity." (Doc. No. 1 at ¶ 7.) Plaintiff continues that the above acts "constitute a state-created danger," depriving Plaintiff "of his

constitutional rights to personal protection" pursuant to 42 U.S.C. § 1983. (Doc. No. 1 at ¶ 8.) Plaintiff also alleges that there existed a "special relationship" between Plaintiff and Defendant which required Defendant "to insure that plaintiff's constitutional rights were protected." (Doc. No. 1 at ¶ 9.)

III.  Legal Standard

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the Complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003); Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 127 S. Ct. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 127 S. Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

3

Moreover, the heightened fact-pleading requirement for civil rights complaints has been rejected by the United States Supreme Court. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). Consequently, nothing more is required in making out a complaint under 42 U.S.C. § 1983 than the notice pleading requirement of Federal Rule of Civil Procedure 8. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002); see Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002).

In a Complaint alleging a violation of 42 U.S.C. § 1983, however, the District Court must afford a plaintiff the opportunity to amend the complaint, unless the amendment would be futile. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (citing Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)).

Defendant files this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's Complaint does not invoke the protections of a constitutional or federally-created right as required pursuant to 42 U.S.C. § 1983, and that Plaintiff has failed to make out a claim pursuant to the "state-created danger" theory, and the "special relationship" theory of 42 U.S.C. § 1983. Plaintiff responds that Plaintiff's Complaint sufficiently states a claim for relief.

IV. Analysis

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983. To state a claim for relief under this provision, the Plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989), the United States Supreme Court noted that generally, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not impose an affirmative duty upon the state to protect citizens from the acts of private persons. Id. at 198-200. In DeShaney, the United States Supreme Court rejected the claim of a boy and his mother that local officials, who had repeatedly attempted to ensure the boy's safety from his abusive father, were liable under the "special relationship" theory when the boy remained in his father's custody and was so badly beaten that the boy suffered severe brain damage. Id. at 195-96. In rejecting plaintiffs' claim pursuant to the "special relationship" theory, the Court stated that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." Id. at 199-200. The Court continued its analysis with the following dicta that provided the foundation for the "state-created danger" theory of liability:

> While the State may have been aware of the dangers Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it

5

> placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

Id. at 201.

In Kneipp, the United States Court of Appeals for the Third Circuit relied on the above language in DeShaney to recognize that a plaintiff alleging a substantive due process violation pursuant to 42 U.S.C. § 1983 could proceed in accordance with a "state-created danger" theory where a state does play a part in the creation of the dangers faced by a private person, or where through its actions, the state renders the individual more vulnerable to them. Kneipp, 95 F.3d 1199, 1205, 1211 (3d Cir. 1996). In order to prevail on a state created danger claim, a plaintiff must prove the following:

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Sanford v. Stiles, 456 F.3d 298, 304-05 (3d Cir. 2006) (quoting Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks and footnotes omitted)).

### Averment of a Constitutional or Federal Right

First, Defendant argues that Plaintiff has not alleged "a violation of a constitutional or federally-created right on behalf of the School District" but in fact, is "attempting to proceed under a negligence theory in a personal injury claim in federal court." (Defendant's Brief in Support of Motion to Dismiss, Doc. No. 7 at 3.) (hereinafter "Doc. No. 7 at __"). As discussed above, the state-created danger theory of liability pursuant to 42 U.S.C. § 1983 permits a plaintiff to claim a substantive due process violation where a state does play a part in the creation of the dangers faced by a private person, or where through its actions, the state renders the individual more vulnerable to them. Kneipp, 95 F.3d at 1211. Here, Plaintiff alleges that various acts of Defendant "constitute a state-created danger" which deprived Plaintiff "of his constitutional rights to personal protection to which he is entitled under 42 U.S.C. § 1983." (Doc. No. 1 at ¶ 8.) Although not specifically invoking the Fourteenth Amendment due process clause, Plaintiff has invoked the state's duty to protect that arises pursuant to the due process clause if a claim is made out pursuant to the state-created danger theory. To this end, Defendant argues that Plaintiff's state-created danger claim is deficient for several reasons.

Second Element of State-Created Danger Claim

First, Defendant argues that Plaintiff has "not alleged, and cannot establish, that the School District acted with the requisite degree of culpability in this matter that shocks the conscience," because the Plaintiff's allegations here sound in negligence. (Doc. No. 7 at 5-6.) The United States Supreme Court has indicated that whether behavior rises to the level of "conscience-shocking" will depend upon the facts of each case. County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998). In Sanford, the United States Court of Appeals for the Third Circuit performed a lengthy jurisprudential analysis concerning the appropriate standard of culpability

7

for due process violations and concluded as follows:

> The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. In a "hyperpressurized environment," an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have the time to make "unhurried judgments," deliberate indifference is sufficient. Though we need not decide the issue here, we note the possibility that deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known. We also recognize that there are circumstances involving something less urgent than a "split-second" decision but more urgent than an "unhurried judgment." Generally, this category will include situations in which the state actor is required to act "in a matter of hours or minutes." . . . [In these cases,] defendants [must] disregard a great risk of serious harm.

456 F.3d at 309-310 (footnotes and citations omitted). Consequently, Plaintiff must show that Defendant was deliberately indifferent to Plaintiff's safety.[1] Here, Plaintiff has averred that Defendant's actions were, among other things, reckless. (Doc. No. 1 at ¶ 8.) The United States Court of Appeals for the Third Circuit has indicated that it has "declined to distinguish terms such as 'deliberate indifference,' 'reckless indifference,' 'gross negligence,' or 'reckless disregard' in the context of a violation of substantive due process under the Fourteenth Amendment." Kneipp, 95 F.3d at 1208 n. 21 (citing Williams v. Borough of West Chester, 891 F.2d 458, 464 n. 10 (3d Cir. 1989 (citation omitted)). Further, Plaintiff has alleged "[t]hat at the time of, and for a considerable period of time prior to the occurrence of this accident, there existed a dangerous condition which was created and/or maintained by said School District, namely a table saw which was lacking a guard and was able to be used by the minor-plaintiff without supervision as set forth more fully below." (Doc. No. 1 at ¶ 5.) In addition, Plaintiff

---

[1]As discussed infra at 11-12, "deliberate indifference" is the necessary standard in order to establish § 1983 liability of a municipality. City of Canton v. Harris, 489 U.S. 378, 388 (1989).

avers that Defendant "had notice, actual and/or constructive, of the absence of the guard on the saw and the dangerous condition created thereby . . .." (Doc. No. 1 at ¶ 7e.) A legitimate inference can be drawn from these averments that school officials might have been actually aware for some time of the table saw lacking a guard, and that it posed a serious risk of physical harm to any student who came in contact with it inside the Industrial Materials classroom. In light of the mandate discussed above that a district court afford plaintiff the opportunity to amend his complaint unless the amendment would be futile, the Court must permit Plaintiff an opportunity to more properly allege the standard of culpability required in state-created danger cases as it pertains to Defendant School District. See Phillips, 515 F.3d at 228 (citing Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)).

Fourth Element of State-Created Danger Claim

Next, Defendant contends that the state-created danger theory concerns the "state's affirmative acts which work to the plaintiff's detriment in terms of exposure to danger" and that "[i]t is a misuse of the state's authority, rather than a failure to use it which can amount to a Due Process violation." (Doc. No. 7 at 6) (citations omitted). Defendant continues that consequently, Plaintiff's allegations regarding failure to maintain the saw, failure to protect Plaintiff, failure to warn, failure to inspect, failure to employ competent instructors, and failure to supervise must be dismissed because they do not allege affirmative acts of Defendant. (Id.) First, it is important to note that the United States Court of Appeals for the Third Circuit has indicated that this final element of the state-created danger test involves "whether the state actor used its authority to create an opportunity which otherwise would not have existed for the

9

specific harm to occur." Morse v. Lower Merion School Dist., 132 F.3d 902, 914 (3d Cir. 1997). After discussing relevant case law and the fact that it is unclear whether an affirmative act is required, (and if so, what constitutes an affirmative act), the court concluded the following: "[T]he dispositive factor appears to be whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable, and not whether the act was more appropriately characterized as an affirmative act or an omission." 132 F.3d at 915. Again, Plaintiff must be given an opportunity to amend his Complaint in an effort to more clearly state how Defendant School District placed the Plaintiff in a dangerous position that was foreseeable.

Special Relationship Theory

Generally, as discussed above, the Due Process Clause does not impose an affirmative duty on the state to protect individuals from harms caused by private citizens. See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 198-200 (1989). The United States Court of Appeals for the Third Circuit has recognized two exceptions to this general rule. The first exception, as discussed at length above, concerns the situation when a "state-created danger" is involved. The second exception where the state has a duty to protect or care for individuals from the acts of private citizens arises when a "special relationship" exists. The "special relationship" theory is a very limited one that requires a custodial relationship in the nature of incarceration or institutionalization. Torisky v. Schweiker, 446 F.3d 438, 444-45 (3d Cir. 2006). The United States Court of Appeals for the Third Circuit has repeatedly stated that no special relationship exists between school children and the state because parents decide where to send their children to school, children remain residents of their parents' home, and children

are not physically restrained from leaving school during the school day. Stanford v. Stiles, 456 F.3d 298, 304 n.4 (3d Cir. 2006) (discussing D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1371-73 (3d Cir. 1992) (holding that no special relationship exists between school children and the state)); Black v. Indiana Area School Dist., 985 F.2d 707, 713 (3d Cir. 1993). See also Bailey v. School Dist. of Philadelphia, 2008 WL 343088 *2 (E.D. Pa., Feb. 7, 2008).

Here, Plaintiff alleges that there existed a "special relationship, which relationship required the defendant to insure that plaintiff's constitutional rights were protected." (Doc. No. 1 at ¶ 9.) Plaintiff appears to confuse the "special relationship" theory of liability pursuant to the Fourteenth Amendment due process clause with the "state-created danger" theory of liability. (See Plaintiff's Brief in Opposition to Dismiss for Failure to State a Claim, Doc. No. 11 at 10-11.) To the extent that Plaintiff is attempting to establish a theory of liability distinct from the "state-created danger" doctrine, Plaintiff's attempt must fail as a matter of law; moreover, any attempt by Plaintiff to amend the Complaint on this theory will be futile. Consequently, the Court must grant Defendant's Motion to Dismiss on the claim of "special relationship" only.

### Municipal Liability

A critical issue in this case that was not raised by either party is the issue of municipal liability under Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978). In Monell, the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that

municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior. Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. Id.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. Id. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986), quoted in, Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. Andrews, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. Bielevicz v. Dubinon, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. Bielevicz, 915 F.2d at 850-51. Municipal liability is not an alternate theory of liability; it is an additional hurdle that must be overcome by a plaintiff in establishing §

1983 liability of a municipality. See generally Sanford, 456 F.3d at 313-14; Kneipp, 95 F.3d at 1211-13; M.B. v. City of Philadelphia, 2003 WL 733879 *3-*8 (E.D. Pa. March 3, 2003).

Here, Plaintiff has not alleged municipal liability on the part of the School District, nor has Defendant moved to dismiss the Complaint for failure to do so. The Plaintiff, however, has alleged some facts that would support the inference that Defendant had notice that a constitutional violation could occur and that it acted with deliberate indifference to this risk. Berg, 219 F.3d at 276. Consequently, Plaintiff must be given an opportunity to amend his Complaint in an effort to state a claim for municipal liability.

V. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss pursuant to 12(b)(6) as it relates to the "Special Relationship" theory of liability only, is granted, as any attempt to amend this claim would be futile as a matter of law. Plaintiff will be given the opportunity to amend all other claims to set forth clearly-identified causes of action that both identify Plaintiff's legal theories and facts suggestive of the proscribed conduct alleged, in accordance with Bell Atlantic v. Twombly. An appropriate Order will be entered.

By the Court:

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc: All counsel of record
    Via electronic filing